1

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   Frederick B. Flores,                    )    No. CIV 10-036 TUC FRZ (GEE)
                                            )
10              Plaintiff,                   )    **REPORT AND RECOMMENDATION**
                                            )
11  vs.                                      )
                                            )
12  ADT Security Services, Inc.; et al.,     )
                                            )
13              Defendants.                  )
                                            )
14  _____ )

15

16          Pending before the court is the plaintiff's motion for partial summary judgment pursuant

17  to FED.R.CIV.P. 56. (Doc. 27)

18          The plaintiff, Frederick Flores, bought a home alarm system from the defendant, ADT

19  Security Services (ADT). While he was out of the country, the alarm system failed, and his

20  home was burglarized.  Flores filed suit claiming breach of contract, tortious breach of the

21  implied covenant of good faith and fair dealing, negligence, and consumer fraud pursuant to

22  A.R.S. § 44-1522.  In the instant motion, Flores moves for partial summary judgment on the

23  exculpatory and liability limitation  provisions in the contract.

24          The case has been referred to Magistrate Judge Edmonds for all pretrial matters pursuant

25  to Local Civil Rule 72.2.  Rules of Practice of the U.S. District Court for the District of Arizona.

26

27

28

The motion for partial summary judgment should be denied.  The liability limitation clause does not violate the doctrine of reasonable expectations, is not unconscionable, and does not violate public policy.  The court analyzed the exculpatory provision in a previously filed report and will not revisit the issue here.  (Doc. 43)

FACTUAL AND PROCEDURAL BACKGROUND

Flores has a homeowner's insurance policy with USAA.  (Doc. 28, ¶ 4)  His USAA representative told him he would receive a discount if he installed a home security system and referred him to ADT.  *Id*.

Flores subsequently contracted with ADT to obtain a home security system.  *Id*., ¶ 6  The contract obliged ADT to install a security system, monitor that system, and notify the homeowner and/or the police in the event of a break-in.  *Id*., ¶¶ 17, 18.

When the alarm system was installed, an ADT technician gave Flores the alarm contract to sign.  *Id*., ¶¶ 9, 10.  The contract is rather lengthy and somewhat difficult to read due to the size of the font and the spacing of the characters.  (Doc. 20, Exhibit B)  Flores signed the contract without reading it.  (Doc. 28, ¶ 11)  No one from ADT discussed the terms of the contract with Flores before he signed it.  *Id*., ¶ 15.

The contract contains a clause relieving ADT from any liability in connection with its performance under the contract.  (Doc. 20, Exhibit B, ¶¶ 5, 6)  The contract contains a second clause limiting ADT's liability to "the greater of $500 or 10% of the annual service charge."  *Id*.

Flores asserts that on May 4, 2009, he provided ADT with the phone number of his girlfriend, who knew how to contact him in the event of a break-in.  (Doc. 28, ¶¶ 19, 20)  Shortly afterwards, Flores was deployed to Baghdad, Iraq as part of his military service.  *Id*., ¶ 20.

On June 10, 2009, ADT received a "low battery signal" from the alarm system.  *Id*., ¶ 23.  The next day, ADT received a "low backup battery signal" from the alarm system.  *Id*., ¶ 24. On June 12, 2009, ADT received three "trouble signals" from the alarm system for the front

1   door, rear door, and garage/carport door. *Id.*, ¶ 26. ADT attempted to notify Flores about the
2   signals but was unsuccessful. (Doc. 38, ¶ 27); (Doc. 28, ¶ 27) ADT did not attempt to contact
3   Flores' girlfriend or the police. (Doc. 28, ¶ 28)

4           Flores' home was burglarized some time in June of 2009. *Id.*, ¶ 21.

5           Flores filed suit in state court claiming breach of contract, tortious breach of the implied
6   covenant of good faith and fair dealing, negligence, and consumer fraud pursuant to A.R.S. §
7   44-1522. ADT removed the action pursuant to this court's diversity jurisdiction.

8           On March 11, 2010, ADT filed a motion for judgment on the pleadings. (Doc. 20) On
9   June 28, 2010, this court issued a report recommending the District Court grant the motion in
10  part and dismiss Flores' claims for negligence and the tortious breach of the implied covenant
11  of good faith and fair dealing. (Doc. 43)

12          In the instant motion, Flores moves for summary judgment pursuant to FED.R.CIV.P. 56
13  on the exculpatory and liability limitation provisions in the alarm contract.

14

15          Standard of Review

16          Summary judgment is appropriate only "if the pleadings, the discovery and disclosure
17  materials on file, and any affidavits show that there is no genuine issue as to any material fact
18  and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). There
19  is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a
20  verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

21          The initial burden rests on the moving party to point out the absence of any genuine issue
22  of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party has
23  the burden of proof at trial, that party carries its initial burden by presenting evidence showing
24  no reasonable trier of fact could find for the nonmoving party. *Calderone v. United States*, 799
25  F.2d 254, 259 (6th Cir. 1986); *United States v. Four Parcels of Real Property*, 941 F.2d 1428,
26  1438 (11th Cir. 1991). If the moving party does not have the burden of proof at trial, that party
27  carries its initial burden either by presenting evidence negating an essential element of the
28  nonmoving party's claim or demonstrating the nonmoving party cannot meet its burden at trial.

1  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Insurance v. Fritz*,

2  210 F.3d 1099 (9th Cir. 2000).

3      Once satisfied, the burden shifts to the opponent to demonstrate through production of

4  probative evidence that an issue of fact remains to be tried.  *Celotex,* 477 U.S. at 324.  "When

5  a motion for summary judgment is properly made and supported, an opposing party may not

6  rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits

7  or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."

8   Fed.R.Civ.P. 56(e)(2).  Summary judgment is appropriate "against a party who fails to make

9  a showing sufficient to establish the existence of an element essential to the party's case, and

10  on which that party will bear the burden of proof at trial." *Thomas v. Douglas*, 877 F.2d 1428,

11  1430 (9th Cir. 1989).

12      When considering a motion for summary judgment, the court is not to make credibility

13  determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.

14  1990).   Instead, the court should draw all inferences in the light most favorable to the

15  nonmoving party. *Id.*

16

17      Discussion

18      Flores argues he is entitled to partial summary judgment on the exculpatory and liability

19  limitation provisions in the alarm contract.  This court analyzed the exculpatory clause in its

20  Report and Recommendation issued on June 28, 2010.  (Doc. 43)  This court concluded the

21  clause is void because it cannot be understood by the reasonably intelligent customer and it

22  violates the customer's reasonable expectations.  *Id*.  This court sees no reason to revisit the

23  issue, and will limits its analysis in this report to the liability limitation clause.

24      Flores argues the liability limitation clause violates the reasonable expectations doctrine,

25  is unconscionable, and is against public policy.  The court finds the clause to be valid.

26      Ordinarily, a party to a standardized contract is bound by all the terms of the contract

27  even those terms that were not bargained for, understood, or even read by the party at the time

28  of contracting. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*,  140 Ariz. 383,

394, 682 P.2d 388, 399 (1984).  There are, however, exceptions to this general rule.  For example, if the offeror of the standardized contract "has reason to believe that the party [accepting the contract] would not do so if he knew that the writing contained a particular term, the term is not part of the agreement." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 119 P.3d 1044 (App. 2005).  This is known as the "reasonable expectations doctrine."

The "reason to believe" may be "(1) shown by the prior negotiations, (2) inferred from the circumstances, (3) inferred from the fact that the term is bizarre or oppressive, (4) proved because the term eviscerates the non-standard terms explicitly agreed to, or (5) proved if the term eliminates the dominant purpose of the transaction." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 247-48, 119 P.3d 1044, 1050-51 (App. 2005) (punctuation omitted)  Courts also will consider (6) whether the term "can be understood if the customer does attempt to check on his rights" and (7) "any other facts relevant to the issue of what appellees reasonably expected in this contract." *Id.*

The alarm contract reads in pertinent part as follows:

WE ARE NOT AN INSURER AND YOU WILL OBTAIN FROM AN INSURER ANY INSURANCE YOU DESIRE. THE AMOUNT YOU PAY US IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABILITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY OR THE PROPERTY OF OTHERS LOCATED IN YOUR PREMISES. IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES. YOU WAIVE ALL SUBROGATION AND OTHER RIGHTS OR RECOVERY AGAINST US THAT ANY INSURER OR OTHER PERSON MAY HAVE AS A RESULT OF PAYING ANY CLAIM FOR LOSS OR INJURY TO ANY OTHER PERSON.

\*     \*     \*

NO LIABILITY; LIMITED LIABILITY. YOU AGREE THAT WE…ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES (INCLUDING INTERNET/WEBSITE SERVICES) WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. IF IT IS DETERMINED THAT WE…ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT.

(Defendant's reply, p. 6.); (Doc. 20, Exhibit B, ¶¶ 5, 6)

Flores argues first that the liability limitation provision "eliminate[s] the dominant purpose of the transaction," which is to provide "protection from loss."  (Doc. 27, p. 9)  The court concludes that while "protection from loss" in a general sense is something that an alarm contract will provide, Flores' expansive gloss on that term is not justified by the expectations of the reasonable consumer.

The dominant purpose of the alarm contract is to provide a monitoring service that will notify the homeowner or police in the event of a break-in.  It is certainly hoped that this service will result in protection for the homeowner's property, but if that property is stolen or destroyed, the alarm contract is not designed, first and foremost, as a means by which the homeowner will be made whole.  That, as the alarm contract notes, is the job of the homeowner's insurance policy.  An alarm contract is not an insurance policy.  If it were, its price would be determined by the value of the contents of the home, and it is not.

Flores complains that the liability limitation provision is "buried" in the fine print of a six-page contract.  He further complains that none of the ADT personnel pointed out the clause to him or read the document to him before he signed it.  Assuming all this is true, it is *some* evidence that ADT knew he was unaware of this clause at the time he signed.  It is not, however, particularly strong evidence that ADT knew he would not have signed if he knew of the existence of that clause.  As the *Darner* court noted, businesses often employ form contracts that are neither read nor discussed before the customer signs.  *Darner Motor Sales, Inc.*,  140 Ariz. at 393-94, 682 P.2d at 398-99.    This is done, not to hide embarrassing terms, but as a business expedient.

The court notes that the contract that Flores signed contained the full text of the six page alarm contract.  Moreover, just above the signature line, the contract states as follows:

> YOU ACKNOWLEDGE AND ADMIT THAT BEFORE SIGNING YOU HAVE READ THE FRONT AND BACK OF THIS PAGE IN ADDITION TO THE ATTACHED PAGES WHICH CONTAIN IMPORTANT TERMS AND CONDITIONS FOR THIS CONTRACT.   YOU STATE THAT YOU UNDERSTAND ALL THE TERMS AND CONDITIONS OF THIS CONTRACT, INCLUDING, BUT NOT LIMITED TO, PARAGRAPHS 5,6,7,8,9,10, AND 20.

(Doc. 38 ¶ 11)  Considered as a whole, the form of the contract does not evince at attempt on the part of ADT to purposely hide the liability limitation clause from Flores or any of its other customers.  Flores was clearly informed that he was bound by the attached contract and was specifically directed to read the liability limitation clause contained in paragraph 6.

Flores maintains that if he had known of the liability limitation clause he would have chosen to contract with a different security company.[1]  (Doc. 28, ¶ 40)  Flores' subjective preference, however, is not the test.  The test is whether ADT had reason to believe that Flores would not have signed the contract had he known of the liability limitation clause.  The court concludes it did not.

Flores argues in the alternative that the liability limitation clause is substantively unconscionable.  "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed."  *Harrington v. Pulte Home Corp.,* 211 Ariz. 241, 252, 119 P.3d 1044, 1055 (App. 2005).  "Factors showing substantive unconscionability include contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."  *Id.*(internal punctuation removed).  "The determination of unconscionability is to be made by the court as a matter of law." *Id.*

Flores argues generally that the liability limitation clause is entirely one-sided.  While the clause certainly favors ADT, Flores cannot show it is so one-sided that it is unconscionable as a matter of law.  He has not, for example, shown that the contract fixes ADT's liability at such a low figure that it eliminates the need for ADT to monitor his alarm system with reasonable care as required by the contract.  *See  800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz. 200, 203, 196 P.3d 222, 225 (2008).

Flores further argues the alarm contract does not allow the customer to choose from among different levels of liability.  He does not, however, explain why the absence of this

---

[1]  Flores does not identify which security companies, if any, assume unlimited liability in the event of a break-in.

flexibility makes the contract unconscionable. If Flores wanted additional contents insurance, he was free to obtain whatever level of insurance he desired from his homeowner's insurance company.

Finally, Flores argues that the liability limitation clause is void as contrary to public policy. He cites *Maurer v. Cerkvenik-Anderson Travel, Inc*., 181 Ariz. 294, 298, 890 P.2d 69, 73 (App. 1994) for the proposition that "[t]he law disfavors contractual provisions where a party tries to immunize itself from the consequences of its own torts." (Doc. 27, p. 13). He argues a liability limitation clause is only enforceable if the parties "did, in fact, bargain for the limitation." *Id.* (*citing Salt River Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp*., 143 Ariz. 368, 383, 694 P.2d 198, 213 (1984).

The court finds this line of case law to be inapposite to the present action. This line of case law deals with the ability of a party to contractually limit its liability in *tort*. *See Salt River Project*, 143 Ariz. at 382, 694 P.2d at 212 ("We begin by noting that there is a difference between attempts by a seller to disclaim warranty liability and attempts to disclaim liability in tort."); *abrogated on other grounds by Phelps v. Firebird Raceway*, 210 Ariz. 403, 111 P.3d 1003 (2005). Here, we are dealing with an action grounded in contract.

This court previously concluded that Flores' claims for negligence and tortious breach of the implied covenant of good faith and fair dealing should be dismissed. *See* (Doc. 43) (analyzing ADT's motion for judgment on the pleadings) Assuming these claims are dismissed by the District Court, Flores' complaint sounds in contract, not tort. This line of case law, therefore, is inapposite.

Moreover, this line of case law is difficult to square with the general rule that a person is bound by the provisions of the contract he signs even those terms that are not bargained for or even read at the time of contracting. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 393-94, 682 P.2d 388, 398-99 (1984). Extending *Salt River Project* to the present case would eliminate the advantages of standardized form contracts and put a premium on the failure of the customer to read the terms of his contract. *Id.*

In general, courts throughout the country have concluded that permitting an alarm company to limit its liability is not contrary to public policy. *See Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2nd Cir. 1993) (collecting cases). Because the homeowner is in a superior position to know the value of the contents of his house it makes sense to put on him the responsibility for acquiring the appropriate level of insurance. *Id*. at 49. It would, in fact, be unfair to cast the alarm company in the role of home insurer in exchange for the "one-size-fits-all" alarm maintenance fee. *Id*.

The liability limitation clause is neither unconscionable nor void as contrary to public policy. *Central Alarm of Tucson v. Ganem*, 116 Ariz 74, 78, 567 P.2d 1203, 1207-08 (App. 1977) (Liability limitation clause in burglar alarm contract was neither unconscionable nor against public policy.); *see also D.L. Lee & Sons, Inc. v. ADT Sec. Systems, Mid-South, Inc.*, 916 F.Supp. 1571, 1583 (S.D.Ga. 1995).

RECOMMENDATION:

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order

DENYING the plaintiff's motion for partial summary judgment. (Doc. 27) The liability limitation clause does not violate the doctrine of reasonable expectations, is not unconscionable, and does not violate public policy. Flores' arguments concerning the contract's exculpatory clause are moot in light of this court previous report and recommendation. (Doc. 43)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived.

The Clerk is directed to send a copy of this Report and Recommendation to the parties or their counsel.

DATED this 31st day of January, 2011.

Glenda E. Edmonds
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28